# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Beattie B. Ashmore, in his capacity as court-appointed Receiver for Ronnie Wilson and Atlantic Bullion & Coin, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Lynda Sentell Stevenson, <br><br> Defendant. | Civil Action No. 8:15-cv-02371-JMC <br><br><br><br> **ORDER AND OPINION** |

Plaintiff Beattie B. Ashmore ("Plaintiff"), in his capacity as court-appointed receiver for Ronnie Gene Wilson ("Wilson") and Atlantic Bullion and Coin, Inc. ("AB&C"), filed the instant action against Defendant Lynda Sentell Stevenson ("Defendant") to recover grossly excessive payments received by Defendant as a return on her investment in the Wilson-AB&C Ponzi scheme.[1]

This matter is before the court on Defendant's Motion to Reconsider Order Denying Defendant's Motion to Certify Questions (ECF No. 44). Specifically, Defendant seeks reconsideration of the Order that was entered by the court on November 18, 2016 (the "November Order"), denying Defendant's Motion to Certify Questions of State Law (ECF No.

---

[1] "A Ponzi scheme is a fraudulent investment program in which funds are paid in by investors and later investors['] funds are used to pay out nonexistent phantom profits to the original investors, thus creating the illusion that the fraudulent investment program is a successful, profit generating enterprise which, in turn attracts new investment funds that are used to sustain the fraudulent program." United States v. Wilson, Cr. No. 8:12-cr-00320-JMC, ECF No. 1-1 at 2 ¶ 6 (D.S.C. Apr. 4, 2012). In Wilson, the United States alleged that Wilson, through AB&C, "orchestrated a Ponzi scheme whereby he led investors to believe that he was investing their money in silver, when, in fact, Wilson was not buying silver but using the money for his personal gain . . . [and] [t]o keep the Ponzi scheme going, Wilson also made payments to earlier investors to whom Wilson made representations that their investments were earning high rates of return– sometimes in excess of 200 percent." Id. at ECF No. 17 at 1.

36).  (ECF No. 42 at 5.)  Plaintiff opposes Defendant's Motion asserting that it should be denied.  (ECF No. 54 at 1.)  For the reasons set forth below, the court **DENIES** Defendant's Motion to Reconsider.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the court appointed Receiver in In Re: Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc., C/A No. 8:12-cv-02078-JMC, ECF No. 1 (D.S.C. July 25, 2012), a case related to the instant matter.  Plaintiff alleges that "[o]n April 25, 2007, Defendant made an initial 'investment' [in the Wilson-AB&C Ponzi scheme] of $3,301.07."  (ECF No. 1 at 4 ¶ 24.)  Subsequently, "[o]n May 4, 2007 and June 6, 2007, Defendant made additional 'investments' of $13,854.87 for a total investment of $17,155.94."  (Id. ¶ 25.)  Plaintiff further alleges that "Defendant withdrew a total of $169,000.00 [from the Wilson-AB&C Ponzi scheme] between July 2010 and March 2012, resulting in a profit of $151,844.06."  (Id. at 4–5 ¶ 26.)

Based on his appointment as Receiver tasked with "locating, managing, recouping, and distributing the assets of the Wilson-AB&C investment scheme," Plaintiff commenced the instant action against Defendant on June 11, 2015, asserting claims for fraudulent transfer (in violation of the Statute of Elizabeth, S.C. Code Ann. § 27-23-10 (2014)) and unjust enrichment.  (ECF No. 1 at 1 ¶ 1 & 6 ¶ 38–7 ¶ 52.)  On August 30, 2016, Defendant filed a Motion to Certify Questions of State Law (ECF No. 36) seeking certification to the South Carolina Supreme Court of seven questions "that may be determinative of the cause of this case when it appears that there is no controlling precedent in the decisions of the Supreme Court."  (Id. at 3.)  Plaintiff filed a Response in Opposition (ECF No. 38) on September 16, 2016, to which Defendant filed a Reply on September 26, 2016.  (ECF No. 39.)  After the court entered the November Order, Defendant moved for reconsideration on December 15, 2016.  (ECF No. 43.)

2

## II.     JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. § 1331 pursuant to Plaintiff's allegation that the Complaint "is so related to the In Re Receiver, 8:12-CV-2078-JMC case and the underlying criminal case, United States v. Wilson, et al, 8:12-cr-00320[,]" cases in which the court has jurisdiction, "that it forms part of the underlying case or controversy."  (ECF No. 1 at 1 ¶ 3.)  The court may properly hear Plaintiff's state law claims for fraudulent transfer and unjust enrichment based on supplemental jurisdiction since these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."  28 U.S.C. § 1367(a).

## III.    LEGAL STANDARD AND ANALYSIS

In the November Order, the court made the following observations in denying Defendant's Motion to Certify:

> Defendant fails to demonstrate how answers to her fact-specific questions will absolve her from liability as a "net winner."  Moreover, the court is unconvinced by Defendant's presumption that the victims of the Wilson-AB&C Ponzi Scheme are classified as "equally innocent investors." South Carolina has sufficient controlling precedent regarding Ponzi schemes under the Statute of Elizabeth and the doctrine of unjust enrichment, which allows Plaintiff to recover "profits" from net winners in this case.  Therefore, the court finds that it is unnecessary to certify Defendant's proposed questions to the South Carolina Supreme Court.

(ECF No. 42 at 5.)  Although Defendant seeks reconsideration of the November Order pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (ECF No. 44 at 2), the court agrees with Plaintiff (ECF No. 54 at 2) that Rule[2] 54(b) provides the only appropriate avenue for the relief Defendant seeks at this time.  See Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir. 1991); see also Retractable Techs., Inc. v. Int'l Healthcare Worker Safety Ctr., Misc. No. 3:11-mc-28, 2011 WL 3555848, at *2 (W.D. Va. Aug. 11, 2011) ("Rules 59(e)

---

[2] The court observes that "rule" refers to the Federal Rules of Civil Procedure.

3

and 60(b) govern reconsideration of final orders.").

A.     Applicable Standard under Rule 54(b)

Rule 54(b) provides the following:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Id. Under Rule 54(b), the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003); see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). The Fourth Circuit has offered little guidance on the standard for evaluating a Rule 54(b) motion, but has held motions under Rule 54(b) are "not subject to the strict standards applicable to motions for reconsideration of a final judgment." Am. Canoe Ass'n, 326 F.3d at 514; see also Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1472 (4th Cir. 1991) (the Court found it "unnecessary to thoroughly express our views on the interplay of Rules 60, 59, and Rule 54"). In this regard, district courts in the Fourth Circuit, in analyzing the merits of a Rule 54 motion, look to the standards of motions under Rule 59 for guidance. See U.S. Home Corp. v. Settlers Crossing, LLC, C/A No. DKC 08-1863, 2012 WL 5193835, at *2 (D. Md. Oct. 18, 2012); R.E. Goodson Constr. Co., Inc. v. Int'l Paper Co., C/A No. 4:02-4184-RBH, 2006 WL 1677136, at *1 (D.S.C. June 14, 2006); Akeva L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 565–66 (M.D.N.C. 2005). Therefore, reconsideration under Rule 54 is appropriate on the following

4

grounds: (1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice. Beyond Sys., Inc. v. Kraft Foods, Inc., C/A No. PJM-08-409, 2010 WL 3059344, at *2 (D. Md. Aug. 4, 2010) ("This three-part test shares the same three elements as the Fourth Circuit's test for amending an earlier judgment under Rule 59(e), but the elements are not applied with the same force when analyzing an[] interlocutory order.") (citing Am. Canoe Ass'n, 326 F.3d at 514).

B.      The Parties' Arguments

Defendant moves the court to reconsider its November 18, 2016 Order because the Supreme Court has yet to address the application of Ponzi schemes "to the Statute of Elizabeth or to principles of equity relating to unjust enrichment." (ECF No. 44 at 1.) In support of her request, Defendant argues that "[w]hile South Carolina has certainly addressed the Statute of Elizabeth and the common law principles of unjust enrichment, it has not done so in the context of a Ponzi case in which the result would be to redistribute invested funds amongst injured investors." (Id. at 2.) In this regard, Defendant argues that the South Carolina Supreme Court has not decided whether (1) the Statute of Elizabeth requires that similarly situated investors in a Ponzi scheme should be required to share in the losses with, or be divested of "profits" for the benefit of equally situated persons who stayed in the investment; and (2) unjust enrichment either requires redistribution of "money paid to one investor over another" or "an investor to repay the perpetrator of a fraudulent scheme." (Id. at 5, 6.) Additionally, Defendant argues that "[i]f South Carolina's Supreme Court similarly determined that neither the Statute of Elizabeth nor South Carolina's common law of unjust enrichment requires the redistribution of funds paid by the perpetrator of an alleged Ponzi scheme from one investor to another, that decision could certainly be outcome determinative in the present case." (Id. at 8.)

Plaintiff opposes the Motion to Reconsider asserting that "Defendant does not state, much less meet, the standard for reconsideration, but instead is improperly attempting to relitigate the same arguments she raised and that this Court has already rejected." (ECF No. 54 at 1.) Plaintiff further asserts that Defendant fails to allege any "intervening change in controlling law," or "new evidence" and cannot demonstrate neither "clear error of law" nor "manifest injustice" because the Motion to Reconsider merely repeats arguments presented in the Motion to Certify. (Id. at 3.) Therefore, Plaintiff asserts that Defendant cannot demonstrate an appropriate basis to reconsider the November Order under Rule 54(b).

C.  The Court's Review

Defendant seeks reconsideration of the court's decision in the November Order to deny her certification of the following seven questions to the South Carolina Supreme Court:

> 1. Whether South Carolina law allows a Court to grant equitable relief, under the common law theory of unjust enrichment, against one investor in a Ponzi scheme in favor of another investor where (1) all investors took an equal risk; (2) the investors' contributions were immediately put at risk when invested and the investors recognized the time value of their money; (3) the proceeds appeared to be the very performance which was promised; (4) the investors would have received similar benefits if the scheme had been a legitimate investment; (5) the other investors were not plaintiffs in the case and were equally "at fault" in trusting an investment advisor who ran the Ponzi scheme; (6) the investors reasonably changed position in reliance on the benefit so that restitution would be inequitable; (7) the investors who reasonably changed position would be placed under significant hardship if restitution was required of them; and (8) the perpetrator of the scheme suffered no injury and had no justifiable claim to recover money from the investors to whom it made the original conveyances when the continued existence of the scheme benefited from the payments to some investors in order to attract later investors.
>
> 2. Whether South Carolina law allows a Court to require investors to disgorge the proceeds of their investments in a Ponzi scheme after (1) they became final transactions and (2) the investors had changed their position in reliance upon the finality of the transaction.

> 3. Whether the doctrines of in pari delicto and unclean hands apply to the potential beneficiaries of an action brought by a Receiver when they were equally "at fault" for trusting an investment advisor who ran a Ponzi scheme.
>
> 4. Whether South Carolina's Statute of Elizabeth (S.C. Code Ann. § 27-23-10) allows for recovery when funds were paid to one creditor rather than another when its stated aim is to prevent persons from defrauding all their creditors by transferring assets to a third person.
>
> 5. Whether it is a matter for the South Carolina legislature, and not the Courts, to decide if final financial transactions can be disturbed in South Carolina to redistribute funds from a Ponzi scheme.
>
> 6. Whether South Carolina law recognizes that when both parties to a dispute have an equitable interest, the first to acquire an equitable interest prevails.
>
> 7. Whether under South Carolina law, the interests of justice demand the use of equitable tolling to expand the liability of investors in an investment that was later determined to be a Ponzi scheme.

(ECF No. 36 at 1-2.)  Defendant argues that certification of the aforementioned questions is appropriate because Plaintiff's claims for fraudulent conveyance and unjust enrichment in the context of a Ponzi scheme are novel issues in the State of South Carolina.  (ECF No. 44 at 1–2.) As stated in the Reply in support of her Motion, Defendant argues that the court's decision in the November Order is either a clear error of law or results in manifest injustice to Defendant.  (ECF No. 55 at 1.)

Clear error occurs when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." United States v. Harvey, 532 F.3d 326, 336 (4th Cir. 2008) (internal quotation marks omitted); see also United States v. Martinez–Melgar, 591 F.3d 733, 738 (4th Cir. 2010) ("[C]lear error occurs when a district court's factual findings are against the clear weight of the evidence considered as a whole.") (internal quotation marks omitted); Miller v. Mercy Hosp., Inc., 720 F.2d 356, 361 n.5 (4th Cir. 1983) (explaining that a district court's factual finding is clearly erroneous if "the finding is against the great preponderance of the

evidence") (internal quotation marks omitted).  Manifest injustice occurs where the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . ." Campero USA Corp. v. ADS Foodservice, LLC, 916 F. Supp. 2d 1284, 1292–93 (S.D. Fla. 2012) (citations omitted).

Upon review, the court correctly observed in the November Order that "where there is no case law . . . directly on point," it must attempt to rule on the question "as the state court would do if confronted with the same fact pattern."  (ECF No. 42 at 2 (quoting Roe v. Doe, 28 F.3d 404, 407 (4th Cir. 1994)).)  The court also correctly observed that certification is appropriate "[o]nly if the available state law is clearly insufficient."  (Id.)  In response to Defendant's arguments regarding certification, the court posits that (1) it has sufficient experience in addressing novel legal issues and (2) South Carolina's case law as to claims for fraudulent conveyance and unjust enrichment is well established enough to provide the appropriate legal foundation for the court's analysis.[3]  In this regard, the court observes that it is capable of analyzing these state law claims in the context of a Ponzi scheme and of reaching a reasoned and principled decision just like the appellate courts of South Carolina would if they were presented with the same issues.  Cf. Twin City Fire. Inc. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005) ("If the Supreme Court of South Carolina 'has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue.' . . . In making that prediction, we may consider lower court opinions in South Carolina, the teachings of treatises, and 'the practices of other states.'") (internal external citations omitted).

---

[3] Defendant concedes there are cases addressing fraudulent conveyance and unjust enrichment. (ECF No. 44 at 2.)  Her arguments focus on the dearth of case law regarding these claims in the context of a Ponzi scheme.  (Id.)

Therefore, upon consideration of the foregoing, the court concludes that entry of the November Order did not result in the commission of either clear error or manifest injustice. Accordingly, the court denies Defendant's Motion to Reconsider.

## IV.    CONCLUSION

Upon careful consideration of the parties' arguments and for the reasons set forth above, the court hereby **DENIES** Defendant Lynda Sentell Stevenson's Motion to Reconsider Order Denying Defendant's Motion to Certify Questions (ECF No. 44).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

February 8, 2017
Columbia, South Carolina

9